UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

```
***************************************************
                                          *
STEPHEN BELZ                              *
KARLA BELZ                                *
            Plaintiffs                    *
                                          *    Civil Action No.
VS.                                       *
                                          *
PEERLESS INSURANCE COMPANY                *    August 28, 2013
                 Defendant                *
                                          *
***************************************************
```

## COMPLAINT

NOW COME the plaintiffs, Stephen Belz and Karla Belz, complaining of the defendant, Peerless Insurance Company, as follows:

## PARTIES

1. The plaintiffs, Stephen Belz and Karla Belz (hereinafter "the Belzes"), own and occupy the residential property located at 5 Tyler Knoll, Vernon, Connecticut.

2. The defendant, Peerless Insurance Company, ("Peerless"), is an insurance company incorporated under the laws of New Hampshire and has a principal place of business at 62 Maple Avenue, Keene, New Hampshire. At all times material to this claim, Peerless was engaged in the business of writing homeowner's insurance policies and issuing such policies to residents of various states, including residents of the State of Connecticut, as a member of the Liberty Mutual Group.

**JURISDICTION**

3.      This Honorable Court has subject matter jurisdiction over this matter pursuant to 42 U.S.C. § 1332(a) as this action involves citizens of different states and the amount of controversy exceeds $75,000.00 exclusive of interest and costs.

**GENERAL ALLEGATIONS**

4.      The Belzes purchased the residential property located at 5 Tyler Knoll Road, Vernon, Connecticut in September of 2001.  The residence was constructed in 1984.

5.      The Belzes have insured their home at 5 Tyler Knoll Road at all times since the year 2001 with a Homeowner's Policy issued by Peerless.

6.      The Belzes paid the premium charged by Peerless each year and, without further action on the Belzes' part, the subject policy was automatically renewed by Peerless yearly subject to the payment of the related premiums, all of which were timely and satisfactorily paid. A copy of the most recent complete Homeowner's Policy issued by Peerless to the Belzes is attached hereto, and made a part hereof, and marked as Exhibit A.

**COUNT I**
**(Breach of Contract)**

7.      The plaintiffs reallege in this Count I the allegations set forth in paragraphs 1 through 6 above as if the same were herein separately set forth.

8.      In April of 2013, the Belzes noticed a series of horizontal and vertical cracks throughout most of the basement walls of their home.

9.      The Belzes immediately undertook an investigation of this condition, its cause, and the method of repair by consulting with various contractors in April of 2013.

10.     Upon further inquiry into the cause of the deterioration and the potential methods of repair, the Belzes discovered that the form of "pattern cracking" found in the basement walls

of their home was due to a chemical compound found in certain basement walls constructed in the late 1980s and the early 1990s with concrete most likely from the J.J. Mottes Concrete Company.

11. The aggregate used by the J.J. Mottes Concrete Company in manufacturing the concrete in that particular time period contained a chemical compound which, with its mixture with water, sand and cement necessary to form the concrete, began to oxidize (rust) and expand, breaking the bonds of the concrete internally and reducing it to rubble.

12. There is no known scientific or engineering method or process which is effective in reversing the deterioration, it continues to advance with or without the presence of visible water.

13. At some point between the date on which the basement walls were poured and the month of April, 2013 the basement walls suffered a substantial impairment to their structural integrity.

14. It is only a question of time until the basement walls of the Belzes' home will fall in due to the exterior pressure from the surrounding soil.

15. With the falling in of the basement walls, the entire home will fall into the basement.

16. The Belzes first learned of the existence of this substantial impairment in early April of 2013 during the process of soliciting estimates from contractors and promptly notified Peerless on May 9, 2013 of the condition of their basement walls.

17. Thereby, the Belzes made a timely claim for coverage of the loss in accordance with the terms of the Homeowner's Policy and the policies issued during the preceding policy years.

18. Peerless investigated the Belzes' claim and dispatched an engineer to inspect the basement walls of the Belzes' home on May 18, 2013.

19. Peerless' claims representative denied the Belzes' claim for coverage by way of letter dated May 29, 2013, claiming that the Homeowner's Policy does not afford coverage for damage caused by poor workmanship and materials. A copy of the denial letter dated May 29, 2013 is attached hereto, and made a part hereof, and marked as Exhibit B.

20. Pursuant to the terms of the Homeowner's Policy, Section I – Property Coverages, Additional Coverages, ¶ 8, as amended by the Special Provisions - Connecticut endorsement, Peerless agreed to provide coverage for "direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:…(b) Hidden decay;… or (f) Use of defective material or methods in construction, remodeling or renovation." Exhibit A, form HO 00 03 04 91 page 5 of 18, as amended by form 80-1CT (10/09), page 1 of 2.

21. The grounds offered by Peerless for the denial of coverage are contrary to the express provisions of the Homeowner's Policy. Exhibit B.

22. In denying coverage, as alleged, Peerless breached its contractual obligation under the Homeowner's Policy, all to the financial loss and damage of the Belzes.

23. Based on the estimates of contractors who have performed replacements to the basement walls of similar structures in the area of the Belzes' home, the cost of replacing the basement walls, along with the related restoration of the deck, landscaping, driveway and walks, is expected to be not less than $175,000.00.

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

24. The plaintiffs reallege in this Count II the allegations set forth in paragraphs 1 through 23 above and paragraphs 41 through 48 below as if the same were herein separately set forth.

25. The Belzes submitted their claim for coverage to Peerless on May 9, 2013.

26. Peerless began their investigation of the Belzes' claim shortly thereafter.

27. Peerless sent an engineer to inspect the condition of the Belzes' home on May 18, 2013.

28. The engineer retained by Peerless determined that the cause of the damage to the Belzes' home was a result of "poor workmanship and materials used." Exhibit B.

29. The Homeowner's Policy issued by Peerless clearly and unambiguously provides coverage for "direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:…(f) Use of defective material or methods in construction, remodeling or renovation." Exhibit A, form HO 00 03 04 91 page 5 of 18, as amended by form 80-1CT (10/09), page 1 of 2.

30. Despite the engineer's determination that the collapse of the Belzes' basement wall was caused by the use of defective methods in the construction of those walls, a covered peril under the policy, Peerless denied the Belzes' claim.

31. Peerless denied coverage despite the fact that its engineer determined the damage was caused by a condition expressly covered by the policy.

32. Nevertheless, Peerless ignored the coverage provided for collapse and denied the Belzes' claim based upon other policy provisions clearly inapplicable and wholly immaterial to the Belzes' claim for coverage.

33. Upon information and belief, Peerless intentionally cited to portions of the policy wholly inapplicable to the Belzes' claim for coverage knowing full well that the Belzes, like most insureds, are unsophisticated with respect to the complex language contained in insurance policies.

34. Upon information and belief, Peerless acted intentionally to mislead the Belzes and convince them that the damage suffered to their home was not covered solely to preserve its own assets by avoiding payment of a covered loss.

35. By denying coverage in this manner, Peerless has impeded the Belzes right to receive benefits that they reasonably expected to receive under the contract for homeowner's insurance.

36. Peerless has acted in bad faith and violated the implied covenant of good faith and fair dealing in the performance of its duties by denying the Belzes' claim for coverage under the Homeowner's Policy.

37. As a direct cause of Peerless' bad faith, the Belzes have suffered loss and damages including loss of monies owed pursuant to their contract of insurance, as already set forth herein, as well as related court costs and attorney's fees to bring suit to litigate their claim, along with the loss of interest on liquidated funds due them under said policy of insurance.

### COUNT III
**(Unfair and Deceptive Practices in Violation of the Connecticut Unfair Insurance Practice Act and the Connecticut Unfair Trade Practices Act)**

38. The plaintiffs reallege in this Count III the allegations set forth in paragraphs 1 through 37 above as if the same were herein separately set forth.

39. Peerless is an insurance company licensed and qualified to engage in the business of insurance within Connecticut.

40. Peerless issued a homeowners insurance policy to the Belzes that provides coverage for the collapse of an insured structure caused by hidden decay or the use of defective materials or methods in construction.

41. Peerless, upon information and belief, participates in the Insurance Services Office, Inc., ("ISO") which is a cooperative organization formed and controlled by its participants for the purpose, among others, of collecting data on claims made in defined geographic areas.

42. The ISO is also instrumental in drafting policy provisions and it prepares interpretations or advice as to the meaning of these provisions.

43. Peerless has not informed its policy holders, including the Belzes, of its participation in or the operations of the ISO.

44. Through the ISO, Peerless has knowledge of the number of claims in northeastern Connecticut that have arisen due to the form of hidden decay in the concrete of the basement walls of residential structures similar to the Belzes' home, and typically related to the use of defective materials or methods in construction. For the purpose of identification, such claims are referred to as "concrete decay" claims.

45. Through the ISO, Peerless has knowledge that most, if not all, insurers facing concrete decay claims in residential structures in northeastern Connecticut have attempted to deny coverage on the grounds that the condition is the result of one or more excluded causes, such as:

    i. ordinary wear and tear;

    ii. water beneath the surface of the ground;

    iii. earth movement and/or settling;

   iv. homeowner negligence in failing to waterproof the exterior of the concrete; or

   v. on the grounds that the claim was not presented in a timely manner.

46. Through the ISO, Peerless has knowledge of cases such as *Bacewicz v. NGM Insurance*, Connecticut Federal District Court Civil Action No. 3:08-CV-01530 (JCH), where the plaintiffs were awarded judgment against the insurer on a concrete decay claim based on policy language identical to that in the Belzes' policy (see para. 21 above).

47. Notwithstanding Peerless' knowledge of the specific policy language alleged in paragraph 21 and the definition of the word "collapse" as it is used in Section I – Property Coverages, Additional Coverages, para. 8, Peerless gave the insured a knowingly false and misleading reason for the denial of coverage.

48. By Peerless' denial of coverage on January 10, 2013 on untenable grounds, it has become a part of or confirmed its participation in an insurance industry wide practice of denying coverage for concrete decay claims, notwithstanding the clear provisions of the Homeowner's Policy, including any previous iterations of that policy, to the contrary.

49. Peerless, based on the facts alleged in Counts I & II above, has failed to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; as it has arbitrarily refused to pay a claim which a reasonable person would determine is covered by one or more of the series of homeowners insurance policies issued to the Belzes.

50. Peerless, based on the facts alleged in paragraphs 42 through and including 48 above, has regularly been engaged, as part of its general business practice, in refusing to attempt

in good faith to effectuate prompt, fair and equitable settlements of concrete decay claims in which liability has become reasonably clear.

51. Peerless' participation in the insurance industry wide practice of denying coverage for concrete decay claims as part of its general business practice is further confirmed by its refusal to provide coverage in at least two (2) separate instances involving other homeowners experiencing the same damage caused by the same mechanism and involving policy language identical to that in the Belzes' policy (see para. 21 above). *See Matthews v. Peerless* Connecticut Federal District Court Civil Action No. 3:12-cv-01506 (WWE); *Waters v. Liberty Mutual Group, Inc., et al.,* Massachusetts Superior Court, Hampden Division, Docket No. 06-131.

52. Peerless has also participated in the insurance industry wide practice of denying coverage for concrete decay claims as part of its general business practice by virtue of its membership in the Liberty Mutual Group.

53. Peerless' participation in the Liberty Mutual Groups practice of denying coverage for concrete decay claims is confirmed by its refusal to provide coverage in at least two (2) separate instances involving other homeowners experiencing the same damage caused by the same mechanism and involving policy language identical to that in the Belzes' policy (see para. 21 above). *See Roberts v. Liberty Mutual Fire Insurance Company,* Connecticut Federal District Court Civil Action No. 3:13-cv-00435 (SRU); *Waters v. Liberty Mutual Group, Inc., et al.,* Massachusetts Superior Court, Hampden Division, Docket No. 06-131.

54. As a direct cause of Peerless' unfair and deceptive trade practices, the Belzes have suffered loss and damages including loss of moneys owed pursuant to their contract of insurance, as already set forth herein, as well as related court costs and attorney's fees to bring suit to

litigate their claim, along with the loss of interest on funds due them under said policy or policies of insurance.

## COUNT IV
### (Unfair and Deceptive Practices in Violation of the Connecticut Unfair Trade Practices Act)

55. The plaintiffs reallege in this Count IV the allegations set forth in paragraphs 1 through 54 above as if the same were herein separately set forth.

56. Peerless denied the Belzes' claim for coverage under the Homeowner's Policy and has failed to effectuate a prompt settlement of that claim despite the fact that liability has become reasonably clear.

57. Peerless has no factual grounds for dismissing the Belzes' claim as poor workmanship and materials used where there has been a collapse of their home due to hidden decay or use of defective materials or methods in construction, perils expressly covered by the insurance policy.

58. This conduct by Peerless, its agents, servants, and employees is unfair, unethical, immoral, oppressive, unscrupulous, and violative of public policy, and is the kind of conduct that causes injuries to consumers.

59. As a direct cause of Peerless' unfair and deceptive trade practices, the Belzes have suffered loss and damages including loss of moneys owed pursuant to their contract of insurance, as already set forth herein, as well as related court costs and attorney's fees to bring suit to litigate their claim, along with the loss of interest on funds due them under said policy or policies of insurance.

**WHEREFORE**, the plaintiffs, Stephen Belz and Karla Belz, claim the following relief against the defendant, Peerless Insurance Company, on each count:

1. Just fair and reasonable money damages against the defendant;

2. Pre judgment and post judgment interest pursuant to *Conn. Gen. Stat* § 37-3a and any other applicable statutes;

3. Attorney's fees and costs pursuant to *Conn. Gen. Stat*. §42-110g and any other applicable statute;

4. Punitive damages pursuant to *Conn. Gen. Stat*. §42-110g;

5. Such other and further relief as the court deems just and equitable.

**The Plaintiffs Demand a Trial by Jury on All Counts So Triable.**

**PLAINTIFFS, STEPHEN BELZ AND KARLA BELZ**

/s/ Scott A. Storms, Esq.             .
18 Suffield Street
Windsor Locks, CT 06096
(860) 623-2615 – *Telephone*
(860) 623-2616 – *Facsimile*
stmslaw@aol.com