UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN BELZ AND KARLA BELZ | : | NO.: 3:13-CV-01315-JCH |
| | : | |
| v. | : | |
| | : | |
| PEERLESS INSURANCE COMPANY | : | JANUARY 16, 2014 |

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO DISMISS

The Defendant, Peerless Insurance Company ("Peerless"), hereby submits this Memorandum of Law in Support of its motion to dismiss the complaint.

**I.    BACKGROUND AND FACTS:**

This is an action to recover benefits under a homeowners insurance policy issued to the plaintiffs by Peerless. The complaint alleges breach of contract, breach of the implied covenant of good faith and fair dealing; and violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") and Unfair Trade Practices Act ("CUTPA").

The alleged facts giving rise to this action (which, for purposes of this motion, are taken as true) are as follows: The plaintiffs purchased the residential property located at Tyler Knoll Road, Vernon, Connecticut, in September, 2001. They insured the property with Peerless. In April of 2013, the plaintiffs noticed cracking in the basement walls of their home. They discovered that the concrete was likely supplied by J.J. Mottes Concrete Company, and contained aggregate that reacts with water and

eventually begins to break down the concrete internally. As a result, the structural integrity of the basement walls has been substantially impaired and is in a state of "collapse". The plaintiffs notified Peerless of their claim on May 9, 2013. Peerless sent an engineer to inspect the damage on May 18, 2013, and denied coverage by letter dated May 29, 2013.

The plaintiffs claim that Peerless' denial of coverage was a breach of the contract. They further claim that the denial was in bad faith and violated CUTPA/CUIPA. The defendant now moves to dismiss the complaint.

## II.    THE POLICY:

The Peerless homeowners policy under which the plaintiffs seek benefits, Policy Number PLP M731262 ("the Policy"), is attached as Exhibit A to the plaintiffs' complaint. The Policy (as amended by the Connecticut Special Provisions endorsement) provides:

### SECTION I—PERILS INSURED AGAINST

**COVERAGE A—DWELLING and COVERAGE B—OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

**1.**     Involving collapse, other than as provided in Additional Coverage 8

(Exhibit A to Complaint, p. 6 of 18).

. . . .

**ADDITIONAL COVERAGES**

. . . .

**8.    Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

- **a.** Perils Insured Against in COVERAGE C—PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage:[1]

- **b.** Hidden decay;

- **c.** Hidden insect or vermin damage;

- **d.** Weight of contents, equipment, animals or people;

- **e.** Weight of rain which collects on a roof; or

- **f.** Use of defective material or methods in construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items **b., c., d., e.,** and **f.** unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

(Exhibit A to Complaint, p. 5 of 18).[2]

---

[1] None of the named perils enumerated in Coverage C—Personal Property apply to this claim. (See Exhibit A to Complaint, pp. 7 of 18 and 8 of 18).

[2] The defendant notes that there other Policy provisions and exclusions that apply to this claim. By filing this motion, the defendant is not waiving its right to assert any other Policy language that may be applicable.

### III.     LAW AND ARGUMENT:

#### A.     Standard Of Review:

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from those allegations in the light favorable to the plaintiff.  See, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  "A motion to dismiss filed pursuant to Rule 12(b)(6) can only be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. "*Russo v. City of Hartford*, 184 F.Supp.2d 169, 178 (D.Conn. 2002) (citation and internal quotation marks omitted).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. " *Id.* (citation and internal marks omitted). " [B]ald assertions and conclusions of law will not suffice to state a claim. . . ." *Russo,* 184 F.Supp.2d at *178* (quoting *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996).

"In ruling on a motion under Rule 12(b)(6), the Court may consider only the allegations made in the complaint, documents attached to the complaint, documents incorporated into the complaint by reference, and any facts of which judicial notice may be taken." *Alkeylani v. Department Of Homeland Security*, 514 F.Supp.2d 258 (D.Conn. 2007) (citing *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996); *Brass v. Am. Film Techn., Inc.,* 987 F.2d 142, 150 (2d Cir.1993)).

**B.     Collapse Of Basement Walls Is Not Covered:**

The gravamen of the plaintiffs' claim is that their basement walls are in a state of "collapse"; therefore, under the Additional Coverage—Collapse provisions in the Policy, they are entitled to the cost of replacing their basement walls. However, the concrete basement walls are part of the foundation of the plaintiffs' home and act as retaining walls to keep the surrounding soil from entering the basement. As noted above, the Policy does not cover collapse of a foundation or a retaining wall unless it is the result of the collapse of a building. Here, there is no allegation that the plaintiffs' dwelling itself has collapsed thereby causing the basement walls to collapse, only that the basement walls themselves have lost their structural integrity.

The plaintiffs will no doubt argue that the undefined term "foundation" is ambiguous as to whether it includes the basement walls, and therefore, under the *contra preferentum* rule, must be construed in favor of coverage. However, merely because a policy term is undefined does not render it ambiguous. In such a situation, the court applies the ordinary dictionary definition to that term. "To determine the common, natural, and ordinary meaning of an undefined term, it is proper to turn to the definition found in a dictionary." *New London County. Mutual Ins. Co. v. Zachem*, 145 Conn. App. 160, 166, 74 A.3d 525 (2013). The dictionary definition of foundation is: "a usually stone or concrete structure that supports a building from underneath; . . . an underlying base or support; *especially*: the whole masonry substructure of a building". http://www.merriam-webster.com/dictionary/foundation.

"In Connecticut, insurance policies are construed according to general rules of contract interpretation. They are thus enforced in accordance with the parties' intent, as derived from the plain and ordinary meaning of the policy's terms. . . . The primary rule is that the Court must read the policy language as a layman, rather than [as] an experienced underwriter and should not torture words to import ambiguity where none exists." (Citations and internal quotation marks omitted). *Middlesex Ins. Co. v. Mara*, 699 F.Supp.2d 439, 446-47 (D.Conn. 2010).

The defendant is mindful of this Court's decision in *Bacewicz v. NGM Ins. Co.*, 2010 WL 3023882 (D.Conn. 2010), which concluded that the term "foundation" is ambiguous and must be construed in favor of coverage. However, no Connecticut appellate court has addressed this issue. The only authority cited by this Court was the Alabama Supreme Court decision of *Turner v. State Farm Fire and Casualty Cos.*, 614 So.2d 1029 (Ala. 1993). The defendant vehemently disagrees with the Alabama Supreme Court's interpretation and believes that the Connecticut Supreme Court would conclude otherwise. It is axiomatic that the foundation of a house includes the poured concrete walls that support the structure.[3] Indeed, as this Court noted in *Bacewicz*, even the plaintiffs' expert used the terms "basement walls" and "foundation walls" interchangeably.

---

[3] It is noteworthy that the Alabama Supreme Court in *Turner* did not quote a dictionary definition that even remotely suggested the term "foundation" does not include the poured concrete basement walls.

6

It should also be noted that this action is but one of many similar actions that have been filed in this District,[4] and in Connecticut state courts. Thus, the issue is ripe for adjudication by the Connecticut Supreme Court.

This Court can certify undecided issues of state law to the Connecticut Supreme Court pursuant to Conn. Gen. Stat. § 51-199b(d). Section 82-1 of the Connecticut Practice Book provides: "The supreme court may answer question of law certified to it by a court of the United States . . . when requested by the certifying court if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." As the Second Circuit Court of Appeals has noted:

> Connecticut law permits the federal certification of questions of state law directly to the Connecticut Supreme Court 'if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state.' *See* Conn. Gen. Stat. § 51-199b(d) (2002). And '[t]his Court has long recognized that state courts should be accorded the first opportunity to decide significant issues of state law through the

---

[4] The Court can take judicial notice under Fed. R. Evid. 201 that the following actions have been filed in this District by the Law Offices of Michael D. Parker: *Possardt v. General Casualty Co. v. Wisconsin*, Civil Action No.: 3:13-cv-00055 (SRU); *Roberts v. Liberty Mutual Fire Insurance Company*, Civil Action No.: 3:13-cv-00435 (SRU); *Panciera v. Kemper Independence Insurance Company*, Civil Action No.: 3:13-cv-01009 (JBA); and *Karas v. Liberty Insurance Corp.*, Civil Action No.: 3:13-cv-01836 (SRU). All of these cases involve the same issues and the same policy language as in this case. "Judicial notice may encompass the status of other lawsuits, including in other courts, and the substance of papers filed in those actions. *See, e.g., Anderson,* 337 F.3d at 205 n. 4; *Conopco, Inc.,* 231 F.3d at 86–87; *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384, 1388 (2d Cir.1992) (court can take judicial notice of document filed in another court "to establish the fact of such litigation and related filings") (quoting *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991)); *Sure–Snap Corp. v. State St. Bank and Trust Co.,* 948 F.2d 869, 872 (2d Cir.1991) (taking judicial notice of bankruptcy court findings to determine their preclusive effect); *Dewees v. Legal Servicing, LLC,* 506 F.Supp.2d 128, 130–31 (E.D.N.Y.2007) (taking judicial notice of New York City Civil Court judgment)." *Lefkowitz v. Bank of New York*, 676 F.Supp.2d 229, 248-49 (S.D.N.Y. 2009).

certification process.'  *Parrot v. Guardian Life Ins. Co. of America,* 338 F.3d 140, 144 (2d Cir. 2003).

*Caruso v. Siemens Business Commicatons Systems, Inc.*, 392 F.3d 66, 69 (2d Cir. 2004).

Finally, even if the term "foundation" is ambiguous (which is specifically denied), the basement walls also serve as retaining walls to prevent the surrounding soil from entering the basement.  The ordinary dictionary definition of "retaining wall" is "a wall built to resist lateral pressure other than wind pressure; *esp***:** one to prevent an earth slide".  http://www.merriam-webster.com/dictionary/retaining%20wall.  No court, to the defendant's knowledge, has ever held that the term "retaining wall" is ambiguous. Therefore, coverage is excluded for this reason as well.

Accordingly, since the "collapse" of the basement walls of the plaintiffs' home is not covered under the Policy, there is no breach thereof, and Count One should be dismissed.

### C. Since There Is No Coverage, There Is No Bad Faith:

Count Two of the complaint alleges that the defendant breached the implied covenant of good faith and fair dealing in the contract.  However, the Connecticut Supreme Court recently held that absent a wrongful denial of a benefit under the Policy, there can be no action for bad faith.  *Capstone Building Corp. v. American Motorists Ins. Co.*, 308 Conn. 760, 794-98, 67 A.3d 961 (2013).  Since there is no coverage for the claimed collapse of the basement walls, there is no bad faith on Peerless' part.  For this reason, Count Two should be dismissed.

### D. The Complaint Fails To State A Legally Sufficient Claim Of Violation Of CUTPA/CUIPA:

Counts Three and Four, respectively, allege that the defendant violated the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-815, *et seq.* ("CUIPA"), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA"). At the outset, the defendant notes that with respect to insurance claims, a private right of action CUTPA exists only in the context of a violation of CUIPA. *State v. Acordia, Inc.*, 310 Conn. 1, 37, 73 A.3d 711 (2013). Therefore, Count Four is legally insufficient.

Count Three is captioned "Unfair and Deceptive Practices in Violation of the Connecticut Unfair Insurance Practice Act and the Connecticut Unfair Trade Practices Act". It incorporates all of the preceding allegations of the complaint, and further alleges in paragraph 49, that:

> Peerless, based on the facts alleged in Counts I & II above, has failed to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; as it has arbitrarily refused to pay a claim which a reasonable person would determine is covered by one or more of the series of homeowners insurance policies issued to the Belzes.

In order to prevail under CUTPA/CUIPA, the plaintiffs must plead and prove that the defendant engaged in a general business practice of unfair claims handling practices. *Lees v. Middlesex Ins. Co.,* 229 Conn. 842, 847-49, 643 A.2d 1282 (1994). Paragraph 50, alleges in conclusory fashion, that Peerless has a general business practice of denying concrete decay claims in which liability has become reasonably

9

clear.  The complaint references two cases in which Peerless has allegedly unfairly denied similar claims:  *Matthews v. Peerless Ins. Co.*, Civil Action No.:  3:12-cv-01506 (WWE); and *Waters v. Liberty Mutual Group, Inc.*, Massachusetts Superior Court, Hampden Division, Docket No.:  06-131.  The Court can take judicial notice that the *Matthews* case was voluntarily dismissed by the plaintiffs on October 4, 2013.  That leaves one case on which the plaintiffs base their claim of a general business practice of unfairly denying coverage in "collapse" cases.  In further recognition of the weakness of their CUTPA/CUIPA claim, the plaintiffs assert that the defendant's participation in the Insurance Services Organization, Inc. ("ISO") is evidence of an industry-wide conspiracy to improperly deny "collapse" claims.  Suffice it to say that participation in ISO or the use of ISO forms in insurance policies is not enough to satisfy the very stringent burden of proof for a violation of CUTPA/CUIPA.

Lastly, the plaintiffs' CUTPA/CUIPA claim is premised solely on the alleged unfair denial of coverage for the plaintiffs' "collapse" claim.  Thus, there can be no violation of CUTPA/CUIPA unless it is first established that the underlying claim is covered.  Since the underlying "collapse" claim is not covered, the denial of coverage is not a violation of CUTPA/CUIPA.

## IV.     **CONCLUSION:**

For the foregoing reasons, it is respectfully requested that the motion to dismiss be granted.  Alternatively, the defendant respectfully urges the Court to certify the following question to the Connecticut Supreme Court pursuant to Conn. Gen. Stat.

§ 51-199b(d):   "Is the term 'foundation' as used in a homeowners insurance policy ambiguous such that the rule of *contra preferentum* applies?"

        DEFENDANT,
        PEERLESS INSURANCE COMPANY


        By /s/  Philip T. Newbury, Jr.
          Philip T. Newbury, Jr.
          ct05283
          Howd & Ludorf, LLC
          65 Wethersfield Avenue
          Hartford, CT  06114
          (860) 249-1361
          (860) 249-7665 (Fax)
          E-Mail:  pnewbury@hl-law.com

## **CERTIFICATION**

This is to certify that on **January 16, 2014**, a copy of the foregoing **Memorandum in Support of Motion to Dismiss** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Michael D. Parker, Esquire
Jeffrey R. Lindequist, Esquire
One Monarch Place
Suite 2220
Springfield, MA  01144

                                             /s/  Philip T. Newbury, Jr.
                                             Philip T. Newbury, Jr.