UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

```
****************************************************
                                       *
STEPHEN BELZ                           *
KARLA BELZ,                            *
              Plaintiffs               *
                                       *    Civil Action No.
VS.                                    *    3:13-cv-01315 (JCH)
                                       *
PEERLESS INSURANCE COMPANY,            *    February 20, 2014
              Defendant                *
                                       *
****************************************************
```

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

NOW COME the plaintiffs, Stephen Belz and Karla Belz (hereinafter collectively referred to as "the Belzes"), and submit the following Memorandum of Law in Opposition to the defendant, Peerless Insurance Company's (hereinafter "Peerless") Motion to Dismiss.

## INTRODUCTION

This controversy concerns Peerless' failure to indemnify the Belzes for damage to their home covered by a policy of homeowner's insurance issued by Peerless and purchased by the Belzes.  The Belzes purchased their residence at 5 Tyler Knoll, Vernon, Connecticut in September of 2001.  Complaint, Document No. 1, ¶ 4.  In April of 2013, the Belzes noticed a series of horizontal and vertical cracks throughout most of the basement walls of their home.  *Id.* at ¶ 8.  Upon further inquiry into the condition, its cause, and the method of repair, the Belzes discovered that the form of "pattern cracking" found in their basement walls was caused by the

ORAL ARGUMENT REQUESTED

presence of a chemical compound found in certain basement walls constructed with concrete mixed by the J.J. Mottes Company in the late 1980s and early 1990s.  *Id.* at ¶¶ 9-10.  This particular chemical compound is found in the aggregate of the concrete and will – with its mixture with the water, sand, and cement necessary to form the concrete – begin to oxidize and expand, breaking the bonds of the concrete internally and reducing the concrete to rubble.  *Id.* at ¶ 11.  There is no known scientific or engineering method or process effective in reversing the deterioration.  *Id.* at ¶ 12.

Having observed these conditions the Belzes made a timely claim for coverage to Peerless on May 9, 2013.  *Id.* at ¶ 16.  Peerless investigated the claim by dispatching an engineer to inspect the basement walls of the Belzes' home on May 18, 2013.  *Id.* at ¶ 18.  Peerless then denied the Belzes' claim by way of a letter dated May 29, 2013 claiming that the homeowner's policy does not afford coverage for damage caused poor workmanship and materials.  *Id.* at ¶ 19.  However, the insurance policy at issue contains clear language providing coverage for "direct physical loss to covered property resulting from collapse of a building or any part of a building caused by one or more of the following: (b) Hidden decay;… or (f) *Use of defective materials or methods in construction, remodeling or renovation*."  *Id.* at ¶ 20, *citing* Peerless' homeowner's policy form HO 00 03 04 91, page 5 of 18, as amended by form 80-1CT (10/09), page 1 of 2, and attached to the Complaint at Exhibit A (emphasis added).[1]

Due to Peerless' denial of coverage based upon grounds contrary to the express provisions of the homeowner's policy, the Belzes commenced suit on September 6, 2013

---

[1] In Connecticut, a "collapse" occurs where there has been a substantial impairment to the structural integrity of a structure and does not require an abrupt or catastrophic falling down of a structure.  *See Beach v. Middlesex,* 205 Conn. 246, 252 (1987).

claiming breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive trade practices in violation of the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA").  Peerless' Motion to Dismiss followed on January 16, 2014.

## ARGUMENT

Peerless seeks to dismiss the Belzes' complaint in its entirety.  In doing so, Peerless misapplies both the standards for insurance policy interpretation and the standards for pleading.  First, the terms of the policy appear to provide coverage for the claimed loss.  That said, the plaintiffs submit that the policy language asserted by Peerless to exclude their claim is ambiguous and, therefore, must be construed against Peerless and in favor of coverage.  Second, the Belzes suggest that they have pleaded sufficient facts to suggest that Peerless wrongfully denied their claim in bad faith and, therefore, they have set forth a claim for breach of the implied covenant of good faith and fair dealing.  Finally, the Belzes assert that they have adequately pleaded that Peerless was acting pursuant to its general business practice when failing to settle their claim in good faith and, therefore, they have stated a claim for unfair and deceptive practices in violation of the Connecticut Unfair Insurance Practices Act ("CUIPA") through the private right of action granted by the Connecticut Unfair Trade Practices Act ("CUTPA").

**I.     Standard for Ruling on a Motion to Dismiss.**

The Federal Rules require only that a plaintiff plead "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) *citing Conley v. Gibson,* 355 U.S. 41, 47 (1957).  While a complaint must

contain enough factual content to state a claim that is plausible on its face, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  This plausibility standard is not a "probability requirement." *Id.*

While *Twombly* marked a departure from prior pleading standards it did not apply a "heightened pleading standard." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 569 n. 14 (2007).  In particular, a plaintiff may satisfy the plausibility requirement with allegations made "upon information and belief" particularly where facts are within the possession and control of the defendant.  *Artisa Records LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010).  A plaintiff does not need to plead with facts with exquisite detail, but must at least provide enough facts to raise a reasonable expectation that discovery will reveal evidence of the misconduct complained of.  *Van Dorsten v. Provident Life and Accident Ins. Co.,* 554 F.Supp.2d 285, 289 (D. Conn. 2008).  Though the Supreme Court has recently advanced a more narrow reading of the pleading rules, it still adheres to the proposition that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007).

### II.     The Belzes have Properly Pleaded a Claim for Breach of Contract.

The homeowner's insurance policy issued by Peerless clearly provides coverage for the collapse of a building or any part of a building, if that collapse is caused by an enumerated peril.  Complaint, Document No. 1, ¶ 20, Exhibit A.  The Belzes' complaint alleges that their basement walls have collapsed due to one of two (2) enumerated perils; hidden decay or defective materials or methods used in the construction of their home.  *Id.* at ¶¶ 10-11.

There can be no reasonable doubt but that the basement walls are "part of (the) building." The concrete of these walls has been alleged to have failed to the degree that there has been a "substantial impairment to the structural integrity" of the entire building. See *Beach v. Middlesex Assurance Co.*, 205 Conn. 246, 252 (1987) where the Supreme Court of Connecticut, in the absence of a policy definition, provided its definition of the word "collapse." Where all or part of the building has collapsed due to an enumerated cause, coverage of the loss becomes the obligation of the insurer.

Peerless seeks to avoid that obligation by suggesting that the basement walls are either part of the foundation or constitute a retaining wall. This argument ignores not only precedent of this Court, but also the accepted principles for interpretation of insurance policy terms.

The standards for construing the terms of an insurance policy in Connecticut are clear. Construction of an insurance policy involves a determination of the parties' intent as expressed by the policy language. *Conn. Ins. Guar. Ass'n v. Fontaine,* 278 Conn. 779, 784 (2006). However when performing this analysis the court must construe the policy terms "as laymen would understand them and not according to the interpretation of sophisticated underwriters." *Vermont Mut. Ins. Co. v. Walukiewicz,* 290 Conn. 582, 592 (2009). In particular, "the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." *Id.* Where policy terms are unambiguous those terms are accorded their natural and ordinary meaning. *Jacaruso v. Lebski,* 118 Conn. App. 216, 233 (2009). However, where a term is susceptible to more than one reading, the term is construed against the insurance company as they drafted the policy terms. *New London County Mut. Ins. Co. v. Zachem,* 145 Conn. App. 160, 166 (2013). Ambiguous insurance policy terms are not only

construed against the insurance company, they are construed in favor of coverage. *Middlesex Ins. Co. v. Mara,* 699 F.Supp.2d 439, 446-447 (D.Conn. 2010). *Beach v. Middlesex Assurance Co., supra*, 205 Conn. at 249-250.

This Honorable Court has specifically found that the term "foundation," as used in an identical collapse clause, was "reasonably susceptible to more than one meaning" and was, therefore, ambiguous. *Bacewicz v. NGM Ins. Co.,* 2010 WL 3023882, * 4 (D.Conn. 2010). As a result, this Honorable Court denied summary judgment for the insurer by holding that "a reasonable jury could find that the basement walls of the [plaintiffs'] house did not constitute the 'foundation' of the house." *Id.* Not only does the *Bacewicz* matter involve identical policy language, it also involves identical damage caused by the very same condition present in the Belzes' home. The Belzes suggest that this Honorable Court should follow its prior construction of this policy language and find the term "foundation" ambiguous.

Peerless attempts to assail the sound reasoning of the *Bacewicz* decision by claiming flawed the Alabama Supreme Court decision cited by this Honorable Court in finding the term "foundation" ambiguous. The Alabama Supreme Court construed a nearly identical collapse provision and found the term "foundation" to be ambiguous. *Turner v. State Farm Fire and Cas. Co.,* 614, So.2d 1029, 1030 (Ala. 1993). In particular the court found that the term "foundation" could mean the "three-by-three foot piece of concrete under the basement wall" or the footings which support the entire structure. *Id.* Peerless suggests that Connecticut Supreme Court would not follow this reasoning, however, it offers no citation to any analogous cases or similar policy interpretations of that Court to support its suggestion. Rather, Peerless opines that because the *Turner* court did not pluck the notion that the footing is a foundation from a dictionary, the

reasoning is somehow flawed. However, the lack of dictionary analysis is easily explained by the procedural posture of the *Turner* case. *Turner* involved a motion for summary judgment and did not require a dictionary to discern the intent or understanding of the insured, but rather, had the benefit of the insured's testimony on that point. *Id.* That being said, the notion that the term "foundation" refers to the footing of a structure is supported in a number of dictionaries that define the term as "the lowest load-bearing part of the building." *See* Oxford American Dictionary and Thesaurus, 2003. In homes such as the Belzes', the lowest load-bearing part of the structure would be the footing upon which the basement walls rest.

Furthermore, one need not go all the way to Alabama to find support for this construction as the Rhode Island Supreme Court has also had occasion to address a nearly identical collapse provision. With the facts "on all fours" and with the same policy language, the Rhode Island Supreme Court went farther than the *Turner* Court by finding the whole exclusionary provision containing the term "foundation" to be ambiguous as the proffered application of the exclusion for damage to a "foundation" would render the coverage illusory. *Campbell v. Norfolk & Dedham Mut. Fire. Ins. Co.,* 682 A.2d 933, 936 (1996). The Court wrote that the insureds "had reason to believe they were purchasing a multi-peril contract of insurance that would cover the 'collapse of a building or *any part*' thereof caused by 'hidden decay.'" *Id* (emphasis in the original). The court rejected the insurer's argument that there must first be a "complete and total destruction of the (insured's) dwelling before coverage is triggered for loss to the foundation." *Id.* They went on to rule that if the insurer intended such a result, it could have easily stated that loss to a foundation is excluded unless caused by the collapse of the *entire* building. *Id* (emphasis in the original). The court also thought that requiring the entire building to collapse

before covering the foundation "would render illusory the earlier policy provision purporting to insure against the risk of 'collapse of a building or any part of a building.'" *Id.* at 936. Furthermore, the *Campbell* court found that "foundation" is typically defined as "the lowest division of a building, wall, or the like" again supporting the notation that the term "foundation" can reasonably be read to refer to the footings upon which the basement walls of a building typically sit. *Id. citing* Random House Dictionary of the English Language, Unabridged 2d Edition, 1987.

The same considerations apply to Peerless' attempt to shoe horn the "basement walls" of the Belzes' home into the term "retaining wall." First, the term "retaining wall" is reasonably susceptible to more than one meaning and must be construed against Peerless and in favor of coverage. *Middlesex Ins. Co. v. Mara,* 699 F.Supp.2d 439, 446-447 (D.Conn. 2010). A "retaining wall" is most commonly understood to be "a wall for holding in place a mass of earth or the like, as at the edge of a terrace…" http://dictionary.reference.com/browse/retaining+wall. A "retaining wall" is not usually thought of as part of a building. Such a construction would be far more in line with the colloquial understanding of a retaining wall as "freestanding wall that either resists some weight on one side or prevents the erosion of an embankment." http://www.britannica.com/EBchecked/topic/499892/retaining-wall. Second, requiring the complete destruction of the entire building before coverage is triggered for the collapse of a "retaining wall" – to the extent basement walls can fairly be considered "retaining walls" – would only serve to render illusory the coverage for the collapse of "any part of the building."[2]

---

[2] The Campbell case does not quote the entire collapse exclusion, however, it appears that the policy language was substantially similar to the one in this matter and would also include the term "retaining wall." It seems that the Rhode Island Supreme Court quoted all excluded portions of the building up to the term foundation, and omitted the remaining terms, which would include the term retaining wall. The omitted language is indicated by the "***"

As a result, the entire exclusionary clause championed by Peerless is ambiguous and should be construed in favor of coverage. *Campbell v. Norfolk & Dedham Mut. Fire. Ins. Co.,* 682 A.2d 933, 935-936 (1996).

Finally, it is wholly unnecessary to certify to the Connecticut Supreme Court a matter involving the relatively simple exercise of insurance policy interpretation. There is no need to certify questions to the Connecticut Supreme Court where state appellate and district court decisions adequately address the issue presented. *See Gervais v. Riddle & Assoc., P.C.,* 363 F.Supp.2d 345, 356 (D.Conn. 2005). The standard for interpreting insurance policies is well established. Furthermore, this Honorable Court has construed identical policy language under identical factual circumstances in the *Bacewicz* case, *supra*. This Honorable Court is more than equipped to interpret a standard form homeowner's insurance policy based upon the standards set forth in numerous Connecticut Supreme Court decisions. There is simply no need to trouble the Connecticut Supreme Court with the interpretation of one discrete policy term, where the guidelines for policy interpretation are so clear.

### III. The Belzes Have Properly Pleaded a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

The defendants seek the dismissal of the Belzes' claim for breach of the implied covenant of good faith and fair dealing, based upon a recent decision of the Connecticut Supreme Court. Peerless claims that the Connecticut Supreme Court recently held that there can be no action for bad faith where there is no wrongful denial. However, the allegations made by the Belzes suggest that Peerless intentionally denied their claim despite clear coverage for the loss. Both the facts and policy language are identical to *Bacewicz*, cited above. The complaint further

---

following the term "foundation" in the portion of the opinion quoted the policy language. *Id.* at 935.

alleges that Peerless has acted in bad faith in wrongly denying the covered.

The complaint contains factual allegations relating to the dilatory tactics taken by Peerless in the investigation and determination of this claim, sufficient to state a claim for breach of the implied covenant of good faith and fair dealing. Connecticut law clearly provides that a "duty of good faith and fair dealing is a covenant implied into a contract or contractual relationship." *De La Concha of Hartford, Inc. v. Aetna Life Insurance Company,* 269 Conn. 424, 432 (2004). By this implied covenant "every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of that agreement." *Id.* The actions of a party to a contract constitute a breach of this implied duty where "the acts by which the defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contact have been taken in bad faith." *Id.* The concept of bad faith generally implies both actual or constructive fraud, or a design to mislead or deceive another *but also includes a neglect or refusal to fulfill some duty or some contractual relationship, not prompted by an honest mistake as to one's rights or duties.*" *Bacewicz v. NGM Ins. Co.,* 2009 WL 1929098 (D. Conn. 2009) *citing Habetz v. Condon,* 224, Conn. 231, 237 (1992)(emphasis added).

The Belzes allege that the basement walls of their home have collapsed and that the collapse was caused by an enumerated peril. Complaint, Document No. 1, ¶¶10-11. The Belzes suggest that despite clear coverage, Peerless denied the claim and mislead the Belzes into believing that there was no coverage by citing inapplicable policy language. *Id.* at ¶¶ 19-21. Peerless' conduct, as alleged, does not appear to be prompted by honest mistake, but rather, an intentional decision to refuse to pay a covered loss in an attempt to deprive the Belzes of the

benefits of the insurance coverage they had purchased. The Belzes suggest that the only reasonable inference to be drawn from the conduct alleged in the Complaint, is that Peerless wrongfully denied their claim in bad faith. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *De La Concha of Hartford, Inc. v. Aetna Life Insurance Company,* 269 Conn. 424, 432 (2004). The Belzes suggest that the factual allegations concerning Peerless' conduct have shown more than a speculative right to relief on the theory of breach of the implied covenant of good faith and fair dealing. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Therefore, dismissal of the claim for breach of the implied covenant of good faith and fair dealing is not warranted.

### IV.     The Belzes Have Properly Pleaded a Claim for Violation of CUIPA.

Peerless seeks to dismiss the Belzes claim for violation of CUIPA based upon the assertion that the Complaint lacks sufficient allegations with respect to Kemper's "general business practice."[3] It is true that to prevail on a claim for unfair and deceptive practice in violation of CUIPA a plaintiff must ultimately prove that the misconduct of an insurer must be performed with sufficient frequency to qualify as a general business practice to recover under this legal theory. C.G.S. § 38a-816(6). However, the issue of the frequency with which the defendants engaged in the insurance practices complained of is a more appropriate area for discovery than pleading. *Guillory v. Allstate Ins. Co.,* 476 F.Supp.2d 171, 175-176 (D. Conn. 2007)(denying insurers motion to dismiss pending development of a complete record after discovery). The information needed to develop proof that the defendants engaged in these unfair settlement tactics as a matter of its business practices is necessarily in the possession of the

---

[3] The Belzes concede that *State v. Acordia,* 310 Conn. 1 (2013) now precludes a "stand alone" claim against an insurer for violation of CUTPA. As a result, the Belzes do not object to the dismissal of Count IV of their complaint.

defendants. Without discovery as to the defendants' conduct with respect to similarly situated insureds, the Belzes are simply unable to develop this element of their claim. This approach has been approved by the Connecticut Superior Court by a number of cases allowing conclusory allegations of "general business practice" for purposes of permitting discovery. *See Active Ventilation Products, Inc. v. Property & Cas. Ins. Co. of Hartford,* 2009 WL 2506360 (Conn. Sup. Ct. 2009)(Shortall, J); *see also Jones v. The Standard Fire Ins. Co.,* 2013 WL 541015 (Conn. Sup. Ct. 2013)(Sferrazza, J).[4]

In *Active Ventilation,* this Court upheld a claim for unfair settlement practices based upon a simple allegation of a general business practice, much like the allegation offered by the Belzes in paragraphs 49 and 50 of the Complaint. *Active Ventilation Products, Inc. v. Property & Cas. Ins. Co. of Hartford,* 2009 WL 2506360 (Conn. Sup. Ct. 2009)(Shortall, J.). The Court found that requiring the type of detailed pleading of specific instances of similar misconduct is too heavy a burden to place on a plaintiff, who would have to make such a pleading at the beginning of an action and without the benefit of pre-trial discovery into the insurance company's records. *Id.* at *4. This approach is supported by the fact that CUIPA and CUTPA are remedial statutes, and should be "liberally construed to give effect to the legislature's intent to penalize unfair insurance practices." *Id.* The Court found that this remedial purpose would not be furthered by setting a high pleading bar to commence an action for redress of unfair insurance practices. *Id.* Therefore, the Court found, the better approach is to allow broad allegations of general business practice, without the need for pleading specific instances of misconduct, to allow the case to proceed to discovery.

---

[4] The case of *Jones v. Standard Fire Ins. Co.*, like the *Bacewicz* case, involves damage identical to that suffered by the basement walls of the Belzes' home and caused by precisely the same chemical mechanism.

The rationale underpinning cases like *Active Ventilation* is sound.  Holding plaintiffs to the impossible standard of uncovering a pattern of conduct undertaken by a particular insurance company without the benefit of the discovery process is not the purpose of pleading.  That is why those opinions requiring but a minimum of allegations concerning an insurance company's business practices are well reasoned and offer a practical approach to pleading.  To require more does nothing but undercut the remedial purpose of CUTPA and CUIPA by allowing insurance companies to manipulate rules of civil procedure to insulate themselves from liability occasioned by their own unfair and deceptive acts.  Whether the Belzes can ultimately prove that Peerless employed as its business practice unfair settlement tactics is not material at this time.

Irrespective of the Belzes' position with respect to discovery, they have asserted far more than a bare recitation of Peerless' general business practice.  The Belzes have pointed to two (2) cases in which Peerless unfairly denied an identical claim for coverage under identical policy language.  *See Matthews v. Peerless,* Connecticut Federal District Court Civil Action No. 3:12-cv-01506 (WWE); *Waters v. Liberty Mutual Group, Inc., et al.* Massachusetts Superior Court, Hampden Division, Docket No. 06-131.  While the Matthews ultimately decided not to pursue lengthy and costly litigation against the insurer, Peerless cites no law for the proposition that this decision invalidates the unfair practices committed by Peerless against the Matthews.  CUIPA requires that a plaintiff must ultimately prove that the misconduct of an insurer must be performed with sufficient frequency to qualify as a general business practice to recover under this legal theory.  C.G.S. § 38a-816(6).  The language of CUIPA does not require that the misconduct result in a court judgment to be the predicate of liability for unfair acts taken against another.  While conceding the continued efficacy of *Waters*, Peerless also ignores two (2)

additional identical cases in which it is complicit by virtue of its ownership and control by the Liberty Mutual Group.  They are *Roberts v. Liberty Mutual Fire Insurance Company,* Connecticut Federal District Court Civil Action No. 3:13-cv-00435 (SRU) and *Karas v. Liberty Insurance Corporation,* Connecticut Federal District Court Civil Action No. 3:13-cv-01836 (SRU).  Based upon its actions in these other cases it seems clear that Peerless and the Liberty Mutual Group have adopted a general business practice of denying claims for collapse of a basement wall due to hidden decay or defective materials or methods in construction despite coverage.

Furthermore, the Belzes have alleged that Peerless participates in the Insurance Services Office, Inc. ("ISO"), an insurance industry supported organization responsible for drafting and interpreting the standard form homeowner's insurance policy used in Connecticut.  Complaint, Document No. 1, ¶ 41-42.  Through participation in the ISO, Peerless is privy to knowledge of the "Mottes Concrete" condition in Northeastern Connecticut, the claims made against other insurers, and the tactics used by insurers to avoid paying these otherwise legitimate claims.  *Id.* at ¶ 44-47.  The Belzes have also alleged that by acting to deny coverage, Peerless has become part of or confirmed its participation in the industry wide practice of denying concrete decay claims in spite of clear policy provisions affording coverage.  *Id.* at ¶ 48.  Peerless dismisses these allegations, without citation to supporting authority, as being insufficient to satisfy a "stringent burden of proof."  Peerless ignores that the Belzes are not obligated to meet the ultimate burden of proof on any claim at the pleading stage.  Rather, they need only plead sufficient factual content to "allow the court to draw the reasonable inference that [Peerless] is liable for the misconduct alleged."  *Aashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  The Belzes suggest that it is

only reasonable to infer that Peerless would adopt, by virtue of its participation in the leading industry group, the near universal industry practice of unfairly resisting payment of this type of covered claim.[5]  It is also fair to infer that where Peerless has acted consistently with this industry wide practice with respect to the Belzes' claim for coverage, it would act in a similar or identical manner with respect to any other concrete decay claim it may have faced.  This reasonable inference, based upon facts alleged, is sufficient to withstand the motion to dismiss and permit further discovery.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## CONCLUSION

For the foregoing reasons, the plaintiffs, Stephen Belz and Karla Belz, respectfully request that this Honorable Court deny the defendant, Peerless Insurance Company's, Motion to Dismiss.

                    **PLAINTIFFS,**
                    **STEPHEN BELZ and**
                    **KARLA BELZ**

By: */s/ Michael D. Parker, Esq.*
     Michael D. Parker, Esq.
     One Monarch Place, Suite 2220
     Springfield, MA 01144
     (413) 736-4101 – *Telephone*
     (413) 736-4582 – *Facsimile*
     mparker@mdparkerlaw.com
     Federal Bar #ct29403

---

[5] As suggested by Peerless, the Belzes' counsel is currently involved in ten (10) active cases in the Connecticut and Federal Courts involving the same damage and cause involving the nation's leading insurers including; the Travelers group, Amica, the Metropolitan group, and the Liberty Mutual group.

- 16 -

**CERTIFICATE OF SERVICE**

I hereby certify that on **February 20, 2014**, a copy of foregoing **Plaintiffs' Memorandum of Law in Opposition to the Defendant's Motion to Dismiss** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Michael D. Parker, Esq.*