UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN BELZ and KARLA BELZ, | : | CIVIL CASE NO. |
| Plaintiffs, | : | 3:13-CV-01315 (JCH) |
| | : | |
| v. | : | |
| | : | |
| PEERLESS INSURANCE COMPANY, | : | SEPTEMBER 2, 2014 |
| Defendant. | : | |
| | : | |

**RULING RE: MOTION TO DISMISS (DOC. NO. 20)**

**I.     INTRODUCTION**

Plaintiffs Stephen and Karla Belz (the "Belzes") bring this action against the issuer of their homeowner insurance policy, Peerless Insurance Company ("Peerless"), for its alleged refusal to pay for damage to the basement walls of the Belzes' house according to the terms of their policy.  The Belzes' Complaint (Doc. No. 1) contains four counts against Peerless.  The first count alleges that Peerless breached the homeowner insurance policy (the "Policy") that it had issued to the Belzes.  The second count alleges breach of the implied covenant of good faith and fair dealing.  The third count alleges violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA").  The fourth count alleges a standalone violation of CUTPA.

On January 16, 2014, Peerless filed a Motion to Dismiss (Doc. No. 20) the Complaint in its entirety, arguing that the Belzes have failed to state a claim. Specifically, Peerless argues that: (1) the Policy does not cover the type of damage to basement walls that exists in the Belzes' house; (2) the Belzes have not alleged conduct sufficient to show a general business practice of unfairly settling claims; and (3)

1

a private CUTPA action cannot exist in the insurance context without a violation of CUIPA.  Alternatively, Peerless requests that the court certify the following question to the Supreme Court of Connecticut under section 51-199b(d) of the Connecticut General Statutes: "Is the term 'foundation' as used in a homeowners insurance policy ambiguous such that the rule of *contra preferentum* applies?"

For the reasons that follow, the court GRANTS in part and DENIES in part Peerless's Motion to Dismiss.

## II.   FACTUAL BACKGROUND

The Complaint alleges the following facts.  The Belzes own and reside in a house in Vernon, Connecticut.  Compl. ¶ 1.  Peerless, a member of the Liberty Mutual Group, has insured the Belzes' house since 2001.  Id. ¶¶ 2, 5.  In 2013, the Belzes began to notice horizontal and vertical cracks throughout their basement walls.  Id. ¶ 9.  After investigating the cracks, the Belzes discovered that the condition was the result of a chemical compound used in the concrete of certain basement walls in the late 1980s and the early 1990s.  Id. ¶ 10.  As a result of the cracking, "the basement walls suffered a substantial impairment to their structural integrity" making it "only a question of time until the basement walls . . . fall in due to the pressure of the surrounding soil."  Id. ¶¶ 13–14.

Shortly after discovering the cracks in their basement walls, the Belzes notified Peerless of the condition and claimed coverage of the loss under the Policy.  Id. ¶¶ 16–17.  Peerless promptly dispatched an engineer to inspect the cracking walls.  See id. ¶ 18.  The engineer determined that the basement walls' condition was the result of poor workmanship and defective materials, and he reported his findings to Peerless.  Id. ¶¶

28–32. Peerless then denied the Belzes' claim for coverage. Id. ¶ 19; id. Ex. B (Doc. No. 1-2). The Policy states that Peerless would cover "direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following: . . . (b) Hidden decay; . . . or (f) Use of defective material or method of construction, remodeling or renovation." Id. ¶ 20; id. Ex. A, Homeowners 3 Special Form, at 5.

### III. STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'" (alteration in original)). The court takes the factual allegations of the complaint to be true, Hemi Grp., LLC v. City of New York, 130 S.Ct. 983, 986–87 (2010), and draws all reasonable inferences in plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009). However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556).

## IV. DISCUSSION

### A. Count One: Breach of Contract

A breach of contract requires the creation of an agreement, performance by one party, breach of the agreement by the other party, and resulting damages to the non-breaching party. Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., 311 Conn. 282, 291 (2014). The Belzes have alleged the creation of, and their performance under, a homeowner insurance policy between themselves and Peerless. See Compl. ¶¶ 5–6; see also id. Ex. A. The Belzes have also alleged that they have suffered damages as a result of Peerless's breach of contract. See id. ¶¶ 22–23. Peerless does not appear to dispute the sufficiency of the allegations with respect to these elements. See Def.'s Mem. Supp. Mot. Dismiss (Doc. No. 20-1) at 5–8. Peerless does, however, dispute the sufficiency of the allegations regarding the final element. Specifically, it argues that the Belzes have not alleged facts sufficient to support a breach of contract claim because the damage alleged to exist in the Belzes' basement is not covered under the Policy. Id.

Interpretation of an insurance contract "involves a determination of the intent of the parties as expressed by the language of the policy." Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co., 274 Conn. 457, 463 (2005). "[P]rovisions in insurance contracts must be construed as laymen would understand [them] and not according to

the interpretation of sophisticated underwriters[,] and . . . the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." Vermont Mut. Ins. Co. v. Walukiewicz, 290 Conn. 582, 592 (2009). Where the terms of an insurance policy are plain and unambiguous, the language is to be interpreted according to its natural and ordinary meaning. Peerless Ins. Co. v. Gonzales, 241 Conn. 476, 482 (1997). However, language in a contract is ambiguous if it is susceptible to more than one reasonable interpretation. Poole v. City of Waterbury, 266 Conn. 68, 88 (2003). Ambiguous language in an insurance contract is construed against the drafter of the policy, i.e., the insurance company. See Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co. of Illinois, 247 Conn. 801, 806 (1999); Karas v. Liberty Ins. Corp., 3:13-CV-01836 (SRU), 2014 WL 3579524, at *2 (D. Conn. July 21, 2014); Bacewicz v. NGM Ins. Co., 3:08-CV-1530 (JCH), 2010 WL 3023882, at *3 (D. Conn. Aug. 2, 2010).

The Belzes allege that Peerless breached Section 8 of the Policy, entitled "Collapse." That section states that Peerless

> insure[s] for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following: . . . b. Hidden decay; . . . f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Compl. Ex. A, Homeowners 3 Special Form, at 5. Section 8 also contains certain exclusions. The exclusion relevant here states that "loss to . . . [a] foundation [or] retaining wall . . . is not [covered] . . . unless the loss is a direct result of a building collapse." Id. Peerless argues that the term "foundation" is unambiguous and that the Belzes' basement walls are part of the foundation of the house. See Def.'s Mem. Supp.

Mot. Dismiss 5–8.  Alternatively, Peerless argues that – even if the term "foundation" is ambiguous – the Belzes' basement walls are retaining walls and the term "retaining wall" is unambiguous.  Id. at 8.

As a threshold matter, Section 8 of the Policy, which deals with collapses, applies to these facts because the Belzes have alleged that the cracks in the basement walls are a substantial impairment to walls' structural integrity.  See Beach v. Middlesex Mut. Assur. Co., 205 Conn. 246, 252 (1987) ("[T]he term 'collapse' is sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building.").  Therefore, the issue is whether the terms "foundation" and "retaining wall" are ambiguous.

This court has not only already held that the term "foundation" is ambiguous, but it did so in a case involving similar basement wall cracking and identical policy language.  Bacewicz v. NGM Ins. Co., 3:08-CV-1530 (JCH), 2010 WL 3023882, at *4 (D. Conn. Aug. 2, 2010) (citing Turner v. State Farm Fire & Cas. Co., 614 So. 2d 1029, 1032 (Ala. 1993)).  Indeed, the same conclusion was reached more recently under similar facts and identical policy language in Karas v. Liberty Ins. Corp., 3:13-CV-01836 (SRU), 2014 WL 3579524, at *3 (D. Conn. July 21, 2014).  Such a conclusion is equally appropriate here.  The Belzes argue that the term "foundation" can reasonably be understood to mean "the footings which support the entire structure," Pls.' Mem. Opp'n Def.'s Mot. Dismiss 6 (citing Turner, 614 So. 2d at 1032), or "'the lowest load-bearing part of the structure,'" id. at 7 (quoting Oxford American Dictionary and Thesaurus, 2003).  Meanwhile, Peerless argues that the dictionary definition of "foundation" is "'a usually stone or concrete structure that supports a building from underneath;  . . . an

underlying base or support; *especially*: the whole masonry substructure of a building.'" See Def.'s Mem. Supp. Mot. Dismiss 5 (quoting Merriam-Webster.com, Merriam-Webster.com/dictionary/foundation). Both the Belzes' and Peerless's interpretations of "foundation" are reasonable; therefore, it is an ambiguous term. See Karas, WL 3579524, at *3.

Similarly, Karas considered the meaning of the term "retaining wall" and concluded that it, too, was ambiguous. Karas, 2014 WL 3579524, at *3. This conclusion is also appropriate here because both parties offer differing but reasonable interpretations. The Belzes argue that "[a] 'retaining wall' is not usually thought of as part of a building" and cite Encyclopedia Britannica's definition of the term as a "'freestanding wall that either resists some weight on one side or prevent the erosion of an embankment.'" Pls.' Mem. Opp'n Def.'s Mot. Dismiss 6 (quoting Encyclopedia Britannica, http://www.britannica.com/EBchecked/topic/499892/retaining-wall). Peerless, on the other hand, argues that a retaining wall is "'a wall built to resist lateral pressure other than wind pressure; *esp*: one to prevent an earth slide.'" Def.'s Mem. Supp. Mot. Dismiss 8 (quoting Merriam-Webster, Merriam-Webster.com/dictionary/retaining%20wall). Both parties' interpretations of the phrase "retaining wall" are reasonable, so it is also an ambiguous term. See Karas, WL 3579524, at *3.

Accordingly, the terms "foundation" and "retaining wall" are both ambiguous. Ambiguous terms in the Policy are to be construed against Peerless. Therefore, the Belzes have alleged facts that, if true, constitute a breach of contract. Peerless's Motion to Dismiss Count One is denied.

The court also declines to certify Peerless's proposed question, "Is the term 'foundation' as used in a homeowners insurance policy ambiguous such that the rule of *contra preferentum* applies?", to the Connecticut Supreme Court.  The "Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state."  Conn. Gen. Stat. sec. 51-199b(d).  This statute grants the Connecticut Supreme Court discretion to review a certified question under certain circumstances; it does not demand that a court certify a question.  See id.  The court is satisfied that there is sufficient authority to make a sound decision on whether the term "foundation" is ambiguous.  Therefore, the court denies Peerless's request to certify the question.

B.   Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

In Count Two, the Belzes allege that Peerless breached the implied covenant of good faith and faith dealing.  "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  Warner v. Konover, 210 Conn. 150, 154 (1989) (quotation marks and citation omitted).  A breach of the implied covenant of good faith and fair dealing involves a defendant acting in bad faith to impede the plaintiff's right to receive his or her reasonably expected benefits under the contract.  See De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 433 (2004).  "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive."  Id.  Mere negligence on the part of the

8

defendant does not constitute bad faith; rather, bad faith "involves a dishonest purpose." Id.

Viewing the allegations in the light most favorable to the plaintiffs, the Belzes have alleged facts that, if true, show Peerless's bad faith in denying coverage under the Policy.  Specifically, the Belzes allege that Peerless denied coverage for the basement walls' cracks despite the fact that Peerless knew that the cracks were the result of defective materials or poor workmanship, both of which clearly trigger coverage under the Policy.  Compl. ¶¶ 29–31.  They further allege that Peerless intentionally referred to irrelevant and misleading portions of the Policy in its letter denying coverage to the Belzes, while ignoring the section of the policy that clearly applies.  See Compl. ¶¶ 32–34; id. Ex. B.  (Indeed, the arguments made by Peerless in support of its Motion to Dismiss do not mention the exclusions cited in the denial letter. Compare Def.'s Mem. Supp. Mot. Dismiss 5–8 with Compl. Ex. B.)  Moreover, the Belzes allege that Peerless was aware that the relevant section of the Policy, Section 8, had been (and likely would be) construed in court as covering the type of cracking taking place in the Belzes' basement walls.  See Compl. ¶¶ 41–47.  These allegations contain sufficient facts to survive the Motion to Dismiss.  Therefore, the court denies Peerless's Motion to Dismiss Count Two.

  C. Count Three: Violations of CUTPA and CUIPA

In Count Three, the Belzes allege that Peerless's conduct constitutes a breach of CUTPA and CUIPA.  "A plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision." Karas v. Liberty Ins. Corp., 3:13-CV-01836 (SRU), 2014 WL 3579524, at *4 (D. Conn. July 21,

2014) (citing McCulloch v. Hartford Life and Acc. Ins. Co., 363 F. Supp. 2d 169, 181 (D. Conn. 2005); Mead v. Burns, 199 Conn. 651, 663 (1986)).  To succeed on such a CUTPA claim, a plaintiff must show that the defendant engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged. McCulloch, 363 F. Supp. 2d at 181.

The CUIPA provision relevant to this case is its prohibition of unfair settlement practices.  Conn. Gen. Stat. § 38a-816(6).[1]  "A claim of unfair settlement practice under CUIPA/CUTPA requires the plaintiff to allege that the defendant has committed the alleged proscribed act with sufficient frequency to indicate a general business practice." Karas, 2014 WL, at *4 (citing Conn. Gen. Stat. § 38a-816(6); Bacewicz v. NGM Ins. Co., No. 3:08cv1530 (JCH), 2009 WL 1929098, at *3 (D. Conn. June 30, 2009); Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 672, 613 A.2d 838 (1992)).  It is clear that a "plaintiff must show more than a single act of insurance misconduct . . . [or] isolated instances of unfair settlement practices" in order to successfully claim that the defendant has a general business practice of unfairly resolving disputes.  Id.; see also Lees v. Middlesex Ins. Co., 229 Conn. 842, 849 (1994) ("[T]he legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct. . . .  [T]he defendant's alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct . . . in the processing of any other claim, does not rise to the level of a 'general business practice' . . . ." (internal

---

[1] The Belzes do not explicitly state the provision of CUIPA they are alleging that Peerless violated.  No such explicit citation is necessary; the pleading must simply allege facts from which a violation can be found.  West v. Allstate Ins. Co., FSTCV125013961S, 2013 WL 1277174 (Conn. Super. Ct. Mar. 7, 2013).

citations and quotation marks omitted)).  However, what constitutes a "general business practice" and the frequency with which the plaintiff needs to prove that the defendant has unfairly resolved claims are far less clear.  See 12 Robert M. Langer et al., Conn. Prac. Series, Unfair Trade Practices § 3.13, at 248–61 (2013) (discussing inconsistency in the case law surrounding "general business practices" in CUTPA/CUIPA claims and extensively citing cases).

Both parties urge the court to adopt an extreme view on the matter.  The Belzes argue that the court should adopt a liberal pleading standard, lest the remedial purpose of CUTPA and CUIPA be undercut.  See Pls.' Mem. Opp'n Def.'s Mot. Dismiss 13.  This approach would essentially allow plaintiffs access to discovery so long as they generally allege that the defendants have a general practice of unfair settlement practices.  In contrast, Peerless argues that the Belzes' allegations are "not enough to satisfy the very stringent burden of proof for a violation of CUTPA/CUIPA."  Def.'s Mem. Supp. Mot. Dismiss 10.  The court declines to adopt either of these approaches.  Rather, the appropriate consideration is whether the plaintiff has made facially plausible factual allegations that, in the circumstances of the particular case, the defendant has engaged in the alleged wrongful acts enough to suggest it has a general business practice of doing so.  See Karas v. Liberty Ins. Corp., 3:13-CV-01836 (SRU), 2014 WL 3579524, at *5 (D. Conn. July 21, 2014); Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 672 (1992).  Relevant factors may include: the degree of similarity between the alleged unfair practices in other instances and the practice allegedly harming the plaintiff; the degree of similarity between the insurance policy held by the plaintiff and the policies held by other alleged victims of the defendant's practices; the degree of similarity

between claims made under the plaintiff's policy and those made by other alleged victims under their respective policies; and the degree to which the defendant is related to other entities engaging in similar practices.  See Karas, 2014 WL 3579524, at *5.  The court in Karas held that allegations that an insurance company "and its related entities . . . refused to provide coverage in at least three separate instances involving other homeowners experiencing the same damages caused by the same mechanism and involving policy language identical to that in the [plaintiffs'] policy" plausibly alleged an unfair settlement practice sufficient to survive a motion to dismiss.  Id.

Here, the Belzes allege that Peerless had refused to provide similar coverage in "at least two (2) separate instances involving other homeowners experiencing the same damage caused by the same mechanism and involving policy language identical to that in the Belzes' policy."  Compl. ¶ 51.  The Belzes also point to an additional case in which the Liberty Mutual Group, of which Peerless is a member, denied coverage under similar circumstance and identical policy language.  Id. ¶ 53.[2]  Moreover, the Belzes allege a potential mechanism by which Peerless, the Liberty Mutual Group, and other insurers have come to learn that basement wall cracks are common in northeastern Connecticut, that the current policy language likely covers those claims, and methods to avoid liability for such cracking.  See id. ¶¶ 41–53.

---

[2] The Belzes refer to: Matthews v. Peerless, No. 3:12-CV-01506 (WWE); Waters v. Liberty Mut. Grp., Inc., No. 06-131 (Mass. Supp.); Roberts v. Liberty Mut. Fire Ins. Co., No. 3:13-CV-00435 (SRU) (D. Conn.).  The plaintiffs in Karas referred to the same cases.  2014 WL 3579524, at *9 n.9.  The parties agree that the plaintiff in Matthews withdrew the case, but they disagree as to the significance of such a withdrawal.  The court does not see this withdrawal as removing the case's significance as an instance of an unfair settlement practice; perhaps the unfair practice worked as planned.  Significantly, Karas did not discount the case despite the fact that it had already been dismissed.  Id.

It is important to note that there is no "magic number" of other instances that a plaintiff must allege to survive a motion to dismiss on an unfair settlement practices claim under CUIPA through CUTPA's enforcement provision; rather, the allegations must be considered in the context and circumstances presented by the entire complaint. Viewing the allegations in the light most favorable to the Belzes, the three alleged other instances of unfair settlement practices are sufficient because of the degree of similarity between them and the Belzes' case, and the fact that Peerless has an incentive and mechanism to avoid liability under its current policy language. If proven, these allegations, like those in Karas, 2014 WL 3579524, at *5, contain sufficient facts to show that Peerless, as a member of the Liberty Mutual Group, has a general business practice of unfairly settling disputes in the particular circumstances present here. Therefore, Peerless's Motion to Dismiss Count Three is denied.

      D.     <u>Count Four: Violation of CUTPA</u>

In Count Four of the Complaint, the Belzes allege that Peerless's actions constitute a violation of CUTPA, independent of any violation of CUIPA. "[U]nless an insurance related practice violates CUIPA or . . . some other statute regulating a specific type of insurance related conduct, . . . it cannot be found to violate CUTPA." State v. Accordia, 310 Conn. 1, 37 (2013). The Belzes' claim involves an insurance related practice, so no CUTPA claim can succeed here without showing a violation of CUIPA. The Belzes acknowledge this and do not object to the dismissal of Count Four. Pls.' Mem. Opp'n Def.'s Mot. Dismiss 11 n.3. Peerless's Motion to Dismiss Count Four is granted.

## V. CONCLUSION

For the foregoing reasons, the court **DENIES** Peerless's Motion to Dismiss (Doc. No. 20) Counts One, Two, and Three of the Complaint.  The court **GRANTS** Peerless's Motion to Dismiss Count Four of the Complaint.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 2nd day of September, 2014.

     /s/ Janet C. Hall     
Janet C. Hall
United States District Judge