UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN BELZ AND KARLA BELZ | : | NO.: 3:13-CV-01315-VAB |
| | : | |
| v. | : | |
| | : | |
| PEERLESS INSURANCE COMPANY | : | SEPTEMBER 15, 2016 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION**

The defendant, Peerless Insurance Company ("Peerless"), hereby submits this memorandum of law in support of its motion for reconsideration of this Honorable Court's order ("Order") denying its motion for summary judgment ("motion").

## I. LAW AND ARGUMENT:

### A. Standard Of Review:

> "The standard for granting motions for reconsideration is strict: such motions 'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court…[m]otions for reconsideration will not be granted where the party merely seeks to relitigate an issue that has already been decided. The three major grounds for granting a motion for reconsideration in the Second Circuit are: (1) an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice."
>
> *Pritsker v. American General Life Ins. Co.*, 2016 WL 3747507 (D. Conn. 2016) (internal citations omitted).

**B. Substantial Impairment To Structural Integrity Of A Building Has Never Been Defined.**

In its Order, this Honorable Court held that the standard in Connecticut is "reasonably clear" that a "collapse" may include "substantial impairment to the structural integrity of a building." However, this term has never been defined by the Connecticut Supreme Court. This determination is critical because this phrase is not an engineering term of art. David Grandpre testified in another Parker claim[1] that reasonable engineers can differ as to what constitutes a substantial impairment to structural integrity (**Ex. AA**, p. 10). Mr. Grandpre testified that Carl Cianci is a "very good engineer." (**Ex. AA**, p. 70) and yet they sharply disagree as to what constitutes a substantial impairment to structural integrity (**Ex. AA**, p. 10). Mr. Grandpre believes that a wall that is still standing, still safe, still supports the living area of the home, and would require several inches of movement before it created an unsafe condition suffered a substantial impairment to structural integrity fifteen years ago (**Ex. AA**, pp. 101-108). Mr. Cianci believes that a wall in this condition has not suffered a substantial impairment to structural integrity (**Ex. BB**, p. 7).

[1] Though the plaintiffs' attorneys have coined the term "concrete decay claims", Peerless submits that "Parker claims" is a more applicable term to describe claims for homes which are not in imminent danger of falling over, have remained in the same condition for years, and which do not approximate the conditions at issue in *Beach*.

Peerless submits that if two very good engineers reach the same engineering opinion, but cannot reconcile what the court-created phrase “substantial impairment to structural integrity” means then a jury of laymen stands no chance of reaching an informed opinion.[2] Thus, Peerless has requested certification to the Connecticut Supreme Court for conclusive determination as to the meaning of this phrase while advocating for the definition set forth in *Queen Ann Park Homeowners Ass’n. v. State Farm Fire and Cas. Co.*, 352 P. 3d 790, 791, 794 (Wash. 2015). In resisting certification, the plaintiffs are advocating for a state of affairs wherein “substantial impairment to structural integrity” means something completely different in every case depending upon the whims of a particular jury.

The Belzes’ claim does not meet the standard set forth in *Beach* wherein a substantial impairment to structural integrity was found where the walls were “no longer supporting the house” and the home was “in imminent danger of falling over.” *Beach*, 205 Conn. at 248-249. The factual situation and terminology in *Beach* is similar to that found in *Queen Ann*. The plaintiffs’ lawsuit concerns cracks in the wall,

[2] As the Court noted in its Order, engineers Hugh Mullan and Dave Monaco reached the same engineering conclusions in 2001 and 2013, respectively. The differential conclusion reached by Mr. Grandpre in 2013 and referenced by the Court in the Order is owing to a differing understanding of the court-created phrase “substantial impairment of structural integrity”, as opposed to a truly different engineering conclusion. While this Court declined to assess the credibility of the witnesses, three of these four professional engineers disagree with Mr. Grandpre’s standard, including Mr. Mullan—their own engineer. Mr. Grandpre’s opinion is truly distinguishable only by his knowledge of legal buzzwords.

which are excluded from coverage, and which were documented years prior to the initial Peerless policy. Moreover, *Beach* differentiated between "foundation wall" and the bottom of the "building wall", which indicates that the Connecticut Supreme Court will ultimately hold that the foundation is not part of the building. *Id.* at 247.

This Court declined to consider the extrinsic evidence presented by Peerless on its motion and adhered to the "law-of-the-case doctrine" in finding the terms "foundation" and "retaining wall" ambiguous. However, in a recent decision in a Parker claim, this Court held that the term "foundation" was ambiguous in denying a motion to dismiss and ruled that "[t]he determination of contractual intent may be considered on a motion for summary judgment." *Roberge v. Amica*, 2015 WL 9480008, *3 (D. Conn. 2015). This holding demonstrates that extrinsic evidence is properly considered on a motion for summary judgment and negates the contention that the "law-of-the case doctrine" controls.

Thus, Peerless respectfully requests that this Court reconsider its ruling denying Peerless' motion as to the breach of contract count and its request for certification to the Connecticut Supreme Court.

**C. Peerless' Coverage Denial Was In Good Faith:**

This Honorable Court ruled that there was evidence that Peerless acted reasonably in its investigation and denial of the plaintiffs' claim by dispatching an engineer to inspect the property and basing its denial upon his report. However, it

held that a "genuine factual dispute" remains as to whether the claim was denied with knowledge that it was covered under the Policy. Peerless respectfully requests that this Honorable Court revisit its ruling for a number of compelling reasons.

"A mere coverage dispute or negligence by an insurer in conducting an investigation is not sufficient to state a claim of bad faith against an insurer." *Emmelmann v. American & Foreign Ins. Co.*, 2006 WL 861015, *5 (D. Conn. 2006) As an initial matter, this Honorable Court has repeatedly held that the policy interpretation offered by Peerless is completely reasonable, most recently on page 7 of the Order. *See also, Karas v. Liberty Ins.* Corp, 33 F.Supp. 3d 110, 115 (D. Conn. 2014); Belz *v. Peerless,* 46 F. Supp. 3d 157, 164 (D. Conn, 2014). Furthermore, Peerless' denial letter mirrored that found sufficient to result in a dismissal of a bad faith count in another Parker claim. *Kim v. State Farm Fire and Cas. Co.*, 2015 WL 6675532, *3-4 (D. Conn. 2015). Identical bad faith counts in Parker claims have failed to withstand motions to strike in state court, which this Court has recognized are evaluated based upon a significantly more lenient pleading standard. *Jones v. Standard Fire Ins. Co.*, 2013 WL 541015, *1-2 (Conn. Super. 2013); *Kim*, 2015 WL 6675532 at 6.

Although this Honorable Court did not consider the extrinsic evidence as to the parties' shared understanding of the terms "foundation" and "retaining wall" presented in the motion, it recognized in an early Parker claim that "[w]here contract language creates ambiguity, extrinsic evidence as to the parties' intent may properly be

considered…" *Bacewicz v. NGM Ins. Co.*, 2010 WL 3023882, *3 (D. Conn. 2010)(internal citations omitted).

Peerless has presented extrinsic evidence that the Belzes knew that "foundation" and "retaining wall" referred to their basement walls based upon home inspection and engineering reports prepared in connection with their purchase of the home and reviewed by them prior to its purchase. An impartial jury reasonably could construe these terms against them upon presentation of extrinsic evidence.

This Court has repeatedly indicated in Parker claims its acceptance of "colloquial understandings" of terms to resolve contractual ambiguities. The colloquial understanding of "foundation" is overwhelming. Basement walls are termed the "foundation" in the residential building code and are considered as such in the engineering industry (**Ex. AA**, p. 70-71 and **Ex. BB**, pp. 3-4). The Office of the Attorney General's consumer protection report on this issue concerns "crumbling concrete home foundations." (**Ex. CC**). The Department of Consumer Protection refers to the issue as concerning "crumbling concrete foundations." (**Ex. DD**). A recently-enacted statute repeatedly refers to this issue as concerning the "foundation" and was titled "An Act Concerning Concrete Foundations." (**Ex. EE**). This statute cannot serve its purpose if the basement walls are not the foundation. The Connecticut Department of Insurance's ("DOI") October 6, 2015 notice to all insurers regarded "crumbling foundations." If "foundation" refers only to footings then the DOI

notice which directed that policies cannot be cancelled for “crumbling foundations” similarly cannot serve its purpose (**Ex. FF**).

In 2013, Peerless interpreted the term “foundation” in accordance with the applicable residential building code, the utilization of the term in *Beach*, and the understanding expressed in the construction and engineering industries. Back in 2013, it interpreted this term consistently with how the Connecticut Legislature, Connecticut Attorney General, Connecticut Governor, and local and national news media would ultimately utilize the term in 2015 and 2016. This shared interpretation cannot serve as evidence of bad faith merely because it conflicts with subsequent findings by this Court.

The basis for the Court’s determination that Peerless may have acted in bad faith is an incomplete citation to the testimony of Michael Piacente. Mr. Piacente testified that the condition of the basement walls would not trigger coverage pursuant to the “collapse” provision because the building did not collapse (**Ex. V**, p. 101). The “collapse” provision differentiates between building and foundation. There is no binding Connecticut appellate law which holds that foundation is part of the building.

The Connecticut Supreme Court has never used the phrase “state of collapse” relied upon by this Court. As noted, *supra*, in *Beach*, the Connecticut Supreme Court found a “collapse” occurred where the home was in “imminent danger of falling over” and the walls were not “supporting the house.” *Id.* at 248-249. No Connecticut

appellate court has found that a substantial impairment to structural integrity can constitute something less than where a home is in imminent danger of falling over.

Peerless had no information at the time of claim denial that the home was in imminent danger of falling over or that the walls were not supporting the home. It had two reports from two different engineers—one of which was the plaintiffs' engineer—dated twelve (12) years apart which documented the exact same damage and reached the exact same finding that the walls were structurally sound.

Mr. Piacente's testimony cited by the Court in footnote 3 was not limited in time. His November 20, 2014 testimony as to the non-occurrence of a "collapse" because the walls were still standing almost a year-and-a-half following the claim denial—thus evidencing a lack of any "imminent danger of falling over"—is supported by *Beach*. Mr. Piacente testified that neither Peerless nor he were aware of binding legal precedents regarding "collapse" at the time of the denial (**Ex. V**, pp. 103-104). While the Court may deem this negligent conduct, it does not rise to the level of bad faith.

The Court acknowledges on page 4 of its Order that Mr. Grandpre did not inspect the property until after the denial. Peerless did not have his report when it denied the claim. Thus, even if its adjuster were aware of *Beach*, he would have had no reason to believe that walls with cracks documented in engineering reports prepared twelve years apart and which opined that the walls were structurally sound had, in actuality, suffered a substantial impairment of structural integrity. Moreover,

the record is clear that Mr. Mullan—the plaintiffs' engineer—does not share Mr. Grandpre's understanding of "substantial impairment to structural integrity."

On page 16 of the Order, the Court wrote that Peerless did not allege that it was unaware of multiple Parker claims against it at the time of denial. However, Mr. Piacente repeatedly testified that he was not aware of any other similar claims (**Ex. V**, pp. 182 and 187). This is one of the first Parker claims against Peerless. The record is clear that Peerless was never informed that the findings of Mr. Monaco and Mr. Mullan may be contradicted by a report by Mr. Grandpre. It was unaware of other similar claims against it because, as the plaintiffs' expert, Dean Soucy, has testified, walls crack for a number of reasons (**Ex. T**, pp. 47 and 71).

Its coverage position enjoys substantial case law support from around the country—including appellate authority—and no binding adverse appellate authority. It has considerable extrinsic evidence to support its interpretation which Connecticut law mandates it is entitled to present to the trier of fact. Peerless respectfully submits that the resolution of a purported contractual ambiguity which the Court has repeatedly acknowledged is borne out of competing reasonable interpretations and which will involve consideration of extrinsic evidence prior to conclusive determination is the quintessential example of a coverage dispute, which cannot form the basis for extra-contractual liability.

**D. <u>Peerless Is Entitled To Summary Judgment On The CUTPA/CUIPA Count:</u>**

Peerless respectfully submits that an evaluation of the statutory language pursuant to which the plaintiffs assert a violation of CUIPA should result in its motion being granted. In order for Peerless to be liable pursuant to Conn. Gen. Stat. § 38a-816 (6) (F), there must be a finding that it has a general business practice of "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

This Court has previously interpreted "reasonably clear" in this context to mean that the "existence of liability is substantially certain." *Tucker v. American Intern. Group*, 2015 WL 403195, fn. 48 (D. Conn. 2015). The Order does not contain any mention that liability has become "reasonably clear" or "substantially certain." To the contrary, this Honorable Court repeatedly noted in the Order that the jury will decide at trial if a "collapse" occurred, and, if so, if it occurred during a Peerless policy. Respectfully, if there is a "genuine dispute" about whether a "collapse" even occurred then liability is not reasonably clear. As detailed, *supra*, there are compelling reasons why a reasonable jury may rule in Peerless' favor as to the contractual count. Peerless is well within its rights to assert a good faith coverage position and refuse to settle a claim it believes is excluded from coverage.

The fact that liability is not reasonably clear is exemplified by the numerous loss theories advanced by the plaintiffs: injury-in-fact, manifestation, or the multiple injury trigger. It is not reasonably clear to the plaintiffs, Peerless, or this Court if any particular insurer is responsible for covering this claim, and if liable, for which portion.

Furthermore, the Court drawing all inferences from the record in favor of the non-movant should prove fatal to the general business practice claim. In the event that there is no common timeline for the occurrence of a substantial impairment in Parker claims then there can be no general business practice for responding to them. The plaintiffs' attorneys cannot maintain that Parker claims are all similar when it furthers their extra-contractual theory of recovery while simultaneously maintaining that that they are all distinct when similarities would hinder their ability to place a loss within a particular insurers' policy.

There is nothing that Peerless could have done differently to avoid these extra-contractual counts, short of paying a claim that it had a good faith basis to deny. This is not the standard for bad faith or CUTPA/CUIPA liability.

WHEREFORE, the defendant, Peerless Insurance Company, respectfully requests that this Honorable Court reconsider its decision of September 2, 2016, denying the defendant's motion for summary judgment.

DEFENDANT,
PEERLESS INSURANCE COMPANY

By__/s/ Kieran W. Leary________________
Philip T. Newbury, Jr. (ct05283)
Kieran W. Leary (ct29484)
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 06114
(860) 249-1361
(860) 249-7665 (Fax)
E-Mail: pnewbury@hl-law.com
E-Mail: kleary@hl-law.com

## CERTIFICATION

This is to certify that on **September 15, 2016**, a copy of the foregoing **Defendant's Memorandum of Law in Support of Motion for Reconsideration** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Michael D. Parker, Esquire
Jeffrey R. Lindequist, Esquire
One Monarch Place
Suite 2220
Springfield, MA 01144
**(413) 736-4101**
**(413) 736-4582 fax**
**mparker@mdparkerlaw.com**
**jlindequist@mdparkerlaw.com**

__/s/ Kieran W. Leary______________
Kieran W. Leary